

DA 11-0351

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 265

CITY OF MISSOULA,

       Plaintiff and Appellee,

  v.

LEIGH E. PAFFHAUSEN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC-11-64
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              William E. McCarthy (argued), Worden Thane, P.C., Missoula, Montana

       For Appellee:

              Steve Bullock, Montana Attorney General, Matthew T. Cochenour
              (argued), Assistant Attorney General, Helena, Montana

              Jim Nugent, Missoula City Attorney, Andrew Scott, Deputy City
              Attorney, Missoula, Montana

Argued and Submitted:  April 26, 2012

Decided:  November 20, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Leigh Paffhausen appeals an opinion and order of the District Court for the Fourth Judicial District, Missoula County, affirming a Municipal Court order that excluded Paffhausen's involuntary intoxication defense. We reverse and remand for further proceedings consistent with this Opinion.

¶2 Paffhausen raises two issues on appeal which we have restated as follows:

¶3 1. Whether the lower court erred by failing to apply the voluntary act element of Montana's DUI statute.

¶4 2. Whether the lower court erred by excluding Missoula Police Officers from testifying as to their personal knowledge, opinions, and statements regarding whether Paffhausen was unknowingly drugged, and voluntarily drove a vehicle.

### Factual and Procedural Background

¶5 In the early morning hours of January 18, 2010, Missoula City Police Officer Christian Cameron observed a black SUV driven by Paffhausen run through a stop sign. A few moments later, he saw Paffhausen prematurely slam on the brakes at another stop sign. When Officer Cameron stopped the SUV, he noticed that Paffhausen's speech was slow and slurred, and that her breath smelled of alcohol.

¶6 Officer Cameron attempted unsuccessfully to administer field sobriety tests to Paffhausen. In addition, Paffhausen refused to provide a breath sample. Officer Cameron arrested Paffhausen for driving under the influence of alcohol (DUI), failure to stop at a stop sign, and operating a motor vehicle without her driver's license in her possession.

2

¶7 Shortly after Paffhausen was charged with DUI, she notified the Missoula Police Department that she believed she had been given a "date rape" drug that caused her impairment. At the direction of the City Attorney, Sergeant Scott Pastian conducted an investigation and made statements to the defense regarding his findings.

¶8 At her initial appearance, the Municipal Court dismissed the charge of operating a motor vehicle without a driver's license. Paffhausen filed notice that she intended to assert involuntary intoxication and necessity as affirmative defenses. She also filed a witness list that included the Missoula police chief, the officer investigating her allegation that she had been given a "date rape" drug, a pharmacist, and a physician's assistant.

¶9 Before trial commenced, the City of Missoula (the City) filed a motion to prevent Paffhausen from using involuntary intoxication as a defense arguing that such a defense can only be asserted when a defendant's mental state constitutes an element of the charged offense. The City pointed out that DUI is an absolute liability offense, thus, under Montana law, involuntary intoxication cannot be used as a defense in this case and is irrelevant. The City also moved to exclude testimony from Missoula police officers regarding Paffhausen's involuntary intoxication defense, arguing that such testimony would be based on hearsay.

¶10 Paffhausen responded that she was not asserting the involuntary intoxication defense to challenge a mental state, but rather to show that she did not commit a voluntary act by driving. Paffhausen acknowledged that she voluntarily consumed a small quantity of alcohol the night she was arrested. She contended, however, that

3

someone had drugged her without her knowledge, thus she should not be held responsible for anything that happened to her at the hands of a third party.[1] Paffhausen also argued that the police officers' testimony would be relevant based on their knowledge of intoxication and "date rape" drugs, and that such testimony was not hearsay.

¶11 The Municipal Court granted the City's motion to prevent Paffhausen from claiming involuntary intoxication as a defense, and from calling witnesses about the use of "date rape" drugs in Missoula. Paffhausen appealed to the District Court, but that court affirmed the Municipal Court's ruling. In its opinion and order, the District Court concluded that involuntary intoxication can only be used where the mental state of the defendant is an element of the crime. The District Court also stated that this Court did not specifically contemplate involuntary drugging in the listed defenses that may be provided for under an "automatism" defense. Paffhausen now appeals to this Court.

**Standard of Review**

¶12 We review a lower court's evidentiary rulings, including rulings on motions in limine and expert witness qualifications and competency, for an abuse of discretion. *State v. Edwards*, 2011 MT 210, ¶ 12, 361 Mont. 478, 260 P.3d 396; *State v. Harris*, 2008 MT 213, ¶ 6, 344 Mont. 208, 186 P.3d 1263. An abuse of discretion occurs when a court acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *Harris*, ¶ 6.

---

[1] This type of defense is commonly referred to as an "automatism" defense.

¶13 In addition, we review a lower court's legal conclusions to determine whether those conclusions are correct as a matter of law. *City of Billings v. Gonzales*, 2006 MT 24, ¶ 6, 331 Mont. 71, 128 P.3d 1014.

**Issue 1.**

¶14 *Whether the lower court erred by failing to apply the voluntary act element of Montana's DUI statute.*

¶15 Paffhausen contends that the lower court erred in ruling that the fact she may have been unknowingly drugged is irrelevant, and that Montana law precludes Paffhausen from presenting evidence that she was unknowingly impaired. She maintains that although DUI is an absolute liability offense and thus proof of a mental state is not required, the prosecution still must prove that she voluntarily committed the act of driving a vehicle. She argues, however, that her physical movements were the nonvolitional result of someone's act besides her own, and that they were set in motion by some independent non-human force. Consequently, she contends that the Municipal Court should have allowed her to present evidence that she was unknowingly drugged as it relates to the voluntary act element of DUI.

¶16 Paffhausen also argues that if she is not afforded the opportunity to offer evidence in a defense to the voluntary act element of the DUI statute, then that statute must be unconstitutional because it has severe penalties, carries a serious stigma, and is a "true crime" rather than just a regulatory act.

¶17 The State, arguing on appeal on behalf of the City, maintains that an involuntary act or automatism defense is not available to challenge driving offenses such as DUIs or

5

stop-sign violations, because those offenses are absolute liability offenses. Thus, the manner in which a person became impaired is irrelevant since knowingly or unknowingly becoming impaired is not an element of DUI. The State maintains that even if this type of defense were available, it would not apply to Paffhausen because she was not acting involuntarily as defined by statute. In addition, the State argues that Paffhausen's alternative constitutional challenge was raised for the first time on appeal, thus Paffhausen has waived that argument.

¶18 Montana's DUI statute, § 61-8-401, MCA, provides the following:

> (1) It is unlawful . . . for a person who is under the influence of:
> (a) alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;
> (b) a dangerous drug to drive or be in actual physical control of a vehicle within this state . . . .

Thus, the elements of DUI that the prosecution must prove beyond a reasonable doubt are: (1) that the defendant was driving or in actual physical control of a vehicle; (2) upon the ways of this state open to the public; and (3) while under the influence of alcohol or drugs.

¶19 The DUI statute goes on to say: "Absolute liability . . . will be imposed for a violation of this section." Section 61-8-401(7), MCA. Montana's statutes and case law define an absolute liability offense as an offense that does not require proof of a mental state of purposely, knowingly, or negligently. Section 45-2-104, MCA; *State v. McDole*, 226 Mont. 169, 175, 734 P.2d 683, 686 (1987).

¶20 In this case, Paffhausen admits that she meets two of the three elements in the DUI statute because she was on a public street, and she was impaired by a "date rape" drug.

6

However, she argues that the involuntary impairment from the "date rape" drug prevented her from *voluntarily* driving or being in actual physical control of the vehicle.

¶21 Paffhausen acknowledges that she cannot present evidence that she was unknowingly drugged to show that she lacked the mental state to commit DUI because DUI is an absolute liability offense and does not require a mental state. She maintains, however, that since the State still has to prove that she committed the voluntary act of driving or being in actual physical control of a vehicle, she should be allowed to offer rebuttal evidence that she did not act voluntarily as contemplated and provided for by Montana law.

¶22 Since this Court has not yet addressed the defense of automatism, Paffhausen cites cases from other jurisdictions in support of her argument. In *Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2002), that court held that

> one who engages in what would otherwise be criminal conduct is not guilty of a crime if he does so in a state of unconsciousness or semi-consciousness. Although this is sometimes explained on the ground that such a person could not have the requisite mental state for commission of the crime, the better rationale is that the individual has not engaged in a voluntary act.

Similarly, in *State v. Wilson*, 427 P.2d 820, 825 (Cal. 1967), that court stated:

> Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime. This rule of law . . . applies only to cases of the unconsciousness of persons of sound mind as, for example, . . . the involuntary taking of drugs or intoxicating liquor . . . .

And, the North Carolina Supreme Court stated the following:

> Undoubtedly automatic states exist and medically they may be defined as conditions in which the patient may perform simple or complex actions in a

7

more or less skilled or uncoordinated fashion without having full awareness of what he is doing . . . . The absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability.

*State v. Fields*, 376 S.E.2d 740, 742 (N.C. 1989).

¶23 While these cases are indeed instructive, the case before us on appeal has to rise or fall on the law as it exists in Montana. And, although this Court has not yet judicially recognized the automatism defense, both our statutory and case law indicate that the defense is available.

¶24 In *State v. Korell*, 213 Mont. 316, 332, 690 P.2d 992, 1001 (1984), we briefly discussed the automatism defense explaining that "[a]pplications of the defense may exist where a defendant acts during convulsions, sleep, unconsciousness, hypnosis or seizures." We stated that "[o]ur criminal code's provisions requiring a voluntary act and defining involuntary conduct adequately provide for such defenses." *Korell*, 213 Mont. at 332, 690 P.2d at 1001.

¶25 Section 45-2-202, MCA, provides that "[a] material element of every offense is a voluntary act . . . ." A voluntary act is any act that is not an involuntary act. Section 45-2-101(33), MCA, defines an "involuntary act" as an act that is:

> (a) a reflex or convulsion;
> (b) a bodily movement during unconsciousness or sleep;
> (c) conduct during hypnosis or resulting from hypnotic suggestion; or
> (d) a bodily movement that otherwise is not a product of the effort or determination of the actor, either conscious or habitual.

In addition, the Criminal Law Commission Comments to § 45-2-202, MCA, explain that "a muscular movement may be voluntary ("willed") or involuntary—a physical reflex or

compelled motion which is not accompanied by the volition of the person making the motion. Only the voluntary act gives rise to criminal liability."

¶26 Furthermore, Montana already recognizes "compulsion" as an affirmative defense, and this Court has allowed a defendant to raise that defense in the case of a DUI charge even though DUI is an "absolute liability" offense. The affirmative defense of compulsion is codified at § 45-2-212, MCA, which provides:

> **Compulsion.** A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct that the person performs under the compulsion of threat or menace of the imminent infliction of death or serious bodily harm if the person reasonably believes that death or serious bodily harm will be inflicted upon the person if the person does not perform the conduct.

¶27 In *State v. Leprowse*, 2009 MT 387, 353 Mont. 312, 221 P.3d 648, we stated that compulsion is a well-recognized basis for finding a defendant not guilty of a charged offense, even though the defendant's conduct appears to fall within the definition of that offense. We held in *Leprowse* that

> [u]nder [§ 45-2-212, MCA], for a defendant to avail himself of the defense of compulsion, he must show that: (1) he was *compelled* to perform the offensive conduct (2) by the threat or menace (3) of the *imminent* infliction (4) of *death* or *serious* bodily harm, and that (5) he believed that death or serious bodily harm would be inflicted upon him if he did not perform such conduct, and (6) his belief was reasonable.

*Leprowse*, ¶ 12 (citing *State v. Owens*, 182 Mont. 338, 347, 597 P.2d 72, 77 (1979) (emphasis in original)).

¶28 Leprowse was involved in a physical altercation at a bar with another woman. The individual who eventually broke up the fight testified that after the altercation, he and Leprowse were talking outside the bar when the other woman came "out of nowhere"

9

and knocked them both to the ground. After some name calling between Leprowse and the other woman, Leprowse got in her vehicle and drove away. She was stopped by the police about 14 miles away from the bar and, after admitting to the officer that she was intoxicated, she was arrested and charged with DUI. *Leprowse*, ¶¶ 2-4.

¶29 After a bench trial in Justice Court where she was convicted of DUI, Leprowse sought a trial de novo in the District Court. As trial commenced in that court, Leprowse indicated that she intended to present the affirmative defense of compulsion to the DUI charge. The State responded that compulsion was not a defense to a DUI charge, and that, in any event, Leprowse was not compelled to drive 14 miles away from the bar. The District Court agreed with the State, concluding prior to trial that compulsion was not a defense to a DUI charge. Leprowse pled guilty to the DUI charge reserving her right to appeal the District Court's ruling to this Court. *Leprowse*, ¶¶ 6-7.

¶30 In her appeal, Leprowse argued that the District Court erred in precluding her from presenting the defense of compulsion to the DUI charge even though she made a sufficient offer of proof to satisfy the elements of the compulsion defense. *Leprowse*, ¶ 8. She alleged that she possessed photographic evidence showing that she had been hit in the face, and that she drove away in her car, risking a DUI, because she feared for her personal safety. *Leprowse*, ¶ 13.

¶31 We held that the District Court incorrectly concluded that Leprowse could not present evidence in support of the affirmative defense of compulsion. We stated that Leprowse should be given the opportunity to present evidence, which, if accepted by a rational trier of fact, would show that her belief was reasonable and that she was

10

compelled to take the actions that she did. We also stated that if Leprowse presented sufficient evidence to warrant a jury instruction on compulsion, then the credibility and reasonableness of that defense would be decided by the trier of fact. *Leprowse*, ¶¶ 14-15.

¶32 Thus, based on our holding in *Leprowse*, "absolute liability" does not necessarily mean absolute. Moreover, allowing Paffhausen to raise an automatism defense would accomplish the policies provided for in the Montana Code. Section 45-1-102(1)(b), MCA, provides that one of the general purposes of the provisions governing the definition of offenses is to "safeguard conduct that is without fault from condemnation as criminal." Section 1-3-211, MCA, provides: "No one should suffer for the act of another." And, § 1-3-217, MCA, provides: "A person is not responsible for that which a person cannot control."

¶33 Drinking a non-intoxicating quantity of alcohol is not illegal. What if prior to driving on the night she was arrested, Paffhausen drank a non-alcoholic beverage such as a glass of water or a soft drink that unbeknownst to her contained a "date rape" drug? Under the State's theory, she would still be guilty of DUI. Contrary to its arguments on appeal in this case, the State argued the following in its brief on appeal in a recent case before this Court:

> "It is a basic premise of Anglo-American criminal law that the physical conduct and the state of mind must concur," and when a crime requires certain attendant circumstances, those circumstances must concur with the conduct and the fault as well. Wayne LaFave, Substantive Criminal Law § 3.11(a)-(b) (1986).

*See* Br. of Appellee at 25, *State v. Stoner*, No. DA 11-0435 (April 18, 2012).

11

¶34 Paffhausen believes that she can demonstrate by several independent witnesses and medical professionals that she was drugged against her will, that she did not exercise "independent judgment" in taking a "date rape" drug that resulted in her impairment, and that her acts were the result of an "independent event"—the drugging.

¶35 We conclude that Paffhausen is entitled to raise automatism as an affirmative defense in this case. In doing so, however, Paffhausen should keep in mind that it is the defendant that bears the burden of proving an affirmative defense in a criminal trial. *Leprowse*, ¶ 11 (citing *State v. Reynolds*, 2004 MT 364, ¶ 9, 324 Mont. 495, 104 P.3d 1056). While the State " 'has the burden of proving beyond a reasonable doubt every element of the offense charged, . . . the defendant, if he raises an affirmative defense, has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt.' " *State v. Matz*, 2006 MT 348, ¶ 15, 335 Mont. 201, 150 P.3d 367 (quoting *State v. Daniels*, 210 Mont. 1, 16, 682 P.2d 173, 181 (1984)).

¶36 Automatism refers to behavior performed in a state of unconsciousness or semi-consciousness such that the behavior cannot be deemed volitional. This unconscious or semi-conscious state may be brought about by any one of a variety of circumstances including epilepsy, stroke, concussion, or involuntary intoxication. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.4(a)-(b) (2d ed. 2003)). While the basis of an automatism defense is seldom made clear in the cases, LaFave, *Substantive Criminal Law* § 9.4(b), in those cases that have discussed automatism, evidence supporting that defense is generally in the form of testimony by law enforcement officers or medical experts. *See Peavey v. State*, 248 S.W.3d 455 (Tex. App. 2008) (sheriff's

12

deputy testified for the defense that defendant's eyes were excessively dilated and slow to respond to light stimulus, and that this was not a normal reaction for a person intoxicated on only alcohol); *McClain v. State*, 678 N.E.2d 104 (Ind. 1997) (holding that defendant could call expert witnesses to show that his violent behavior was a form of automatism caused by sleep deprivation); *State v. Boggess*, 673 S.E.2d 791 (N.C. App. 2009) (defendant allowed to introduce expert opinion of forensic psychiatrist that defendant was in "a dissociative trance"); *State v. Jones*, 527 S.E.2d 700 (N.C. App. 2000) (defendant presented medical evidence that defendant suffered from a sleep disorder where the sleeper acts out his dreams); *Polston v. State*, 685 P.2d 1 (Wyo. 1984) (holding that defendant did not meet his burden of proof when he failed to present any medical evidence that he suffered brain trauma that caused an automatistic state).

¶37    Therefore, in the instant case, in order to prove her automatism defense by reason of someone allegedly putting a "date rape" drug in her drink, Paffhausen will have to prove by admissible evidence that she did not act voluntarily when she drove her vehicle. This evidence may include expert medical or pharmacological evidence, non-expert evidence, or a combination of both.  As noted in ¶ 35, it remains always the State's obligation to prove every element of the offense charged beyond a reasonable doubt. Thus, to the extent that Paffhausen offers admissible evidence supporting her automatism defense that she did not act voluntarily, it will remain the State's burden to prove that she did act voluntarily beyond a reasonable doubt.  Sections 45-2-202, 46-16-204, MCA; *cf.* § 46-16-131, MCA (setting out the same framework for justifiable use of force cases).

13

¶38 Furthermore, just as a defendant is required to provide the State with written notice of defendant's intention to produce evidence at trial of the affirmative defenses of compulsion, entrapment, and justifiable use of force under §§ 46-13-110 and 46-15-323, MCA, we require that in order to prevent surprise and to assist in orderly trial administration, an accused asserting an automatism defense must give written notice to the prosecution at or before the omnibus hearing of this defense and the witnesses to be called. Once notice is given, we expect that the court will hold a pre-trial hearing to determine whether the accused asserting this defense is able to offer sufficient admissible evidence to make out a prima facie defense. If the accused is able to make out a prima facie defense on automatism, whether this defense ultimately raises a reasonable doubt as to guilt is a question to be decided by the fact-finder. Furthermore, when, as here, the automatism defense is raised in defense of a strict liability offense, the court shall charge the jury that the defense goes only to whether the accused acted voluntarily.

¶39 Accordingly, we hold that the lower court erred by precluding Paffhausen from raising automatism as an affirmative defense to the DUI charge. Consequently, we reverse and remand this case to the District Court with instructions that it issue an order directing the Municipal Court to conduct further proceedings consistent with this Opinion.

¶40 Finally, as to Paffhausen's alternative constitutional challenge, because we are remanding this case to the District Court, that alternative issue is moot.

¶41 With that said, we make the following observations regarding the Dissent.

14

¶42 First, the Dissent continually claims that Paffhausen is attempting to insert a mental state element into the DUI statute, but, contrary to the Dissent's assertions, and as we already pointed out in this Opinion, Paffhausen concedes that this is an absolute liability offense and there is no mental state element. Rather, Paffhausen argues, and we agree, that since the State has to prove that she committed the act of driving or being in actual physical control of a vehicle, she should be allowed to offer rebuttal evidence that she did not do so voluntarily as contemplated and provided for by Montana law.

¶43 Second, the Dissent correctly points out in ¶ 68, that because Montana's criminal code is modeled after the Illinois Criminal Code, we have repeatedly turned to Illinois for guidance in interpreting our criminal statutes. This does not mean, however, that we must blindly follow the interpretations of the criminal code provided by the courts in Illinois without taking into consideration Montana's unique character and history.

¶44 Third, the Dissent faults this Opinion for citing cases on automatism even though the cases cited did not involve absolute-liability offenses. We cited the three cases the Dissent refers to in its footnote 3 because they were the cases relied on by Paffhausen in her brief on appeal to define automatism itself. Nevertheless, we stated at ¶ 23 after citing these cases, that while they are instructive, the instant case must rise or fall on Montana's own statutory and case law.

¶45 Fourth, the Dissent refers to this Court's prior decision in *State v. Weller*, 2009 MT 168, 350 Mont. 485, 208 P.3d 834, to argue that involuntary intoxication is only a defense if the crime included a mental state element. However, *Weller* is distinguishable from the instant case, because the defendant in *Weller* attempted to attack a non-existent

15

mental state element of the DUI statute, whereas in the instant case, Paffhausen is attacking the element of the offense dealing with driving or being in actual physical control of a vehicle.

¶46    Fifth, the Dissent faults the Opinion for equating the defense of automatism with the compulsion defense that was relied on in this Court's decision in *Leprowse*. The Dissent asserts that it is logical to permit the compulsion defense while disallowing an automatism defense because the compulsion defense "excuses illegal behavior done so as to prevent a harm of greater magnitude." Dissent, ¶ 73. While we disagree with the Dissent's characterization, we reiterate that it is the simple fact that the compulsion defense was allowed at all in *Leprowse* that shows that "absolute liability" is not absolute. Moreover, nothing that we said in *Leprowse* limits the theory we used in that case to compulsion only.

¶47    Sixth, the defense focuses on the "absolute" character of DUI, § 61-8-401, MCA. We agree with that characterization; there is no mental state element in DUI. The fact remains however, that § 45-2-202, MCA, requires that a "material element of *every* offense is a voluntary act" (emphasis added). This latter statute makes no exceptions for absolute liability offenses. While DUI may not include a mental state, it still requires that the accused act "voluntarily." Our rules of statutory construction require that we harmonize statutes relating to the same subject in order to give effect to each. *State v. Johnson*, 2012 MT 101, ¶ 20, 365 Mont. 56, 277 P.3d 1232. Our decision here complies with this rule in the same way that *Leprowse* did.

¶48    Finally, the Dissent complains that the courts are already overburdened and should not have to hold yet another hearing. Dissent, ¶ 77. However, given the substantial evidentiary burden on the accused to prove that she unknowingly and involuntarily ingested a "date rape" drug, we doubt that use of the automatism defense will overburden or overwhelm the courts any more than use of the compulsion defense has. Moreover, a hearing is a small price to pay if seeking justice and not simply a conviction is the object of criminal prosecutions. *See State ex rel. Fletcher v. Dist. Court*, 260 Mont. 410, 415, 859 P.2d 992, 995 (1993).

**Issue 2.**

¶49    *Whether the lower court erred by excluding Missoula Police Officers from testifying as to their personal knowledge, opinions, and statements regarding whether Paffhausen was unknowingly drugged, and voluntarily drove a vehicle.*

¶50    Prior to trial, Paffhausen filed with the court a list of the expert witnesses she intended to call in her defense. Included among those witnesses were Missoula Police Chief Mark Muir and Sergeant Scott Pastian who, Paffhausen claimed, would testify "as to their professional knowledge and opinions regarding their investigation relating to [Paffhausen's] defense and the prevalence and sources of involuntary intoxication in Missoula." The City moved to exclude the officers' testimony, and the Municipal Court granted the City's motion.

¶51    On appeal, Paffhausen contends that the Municipal Court erred in precluding Missoula Police Officers from testifying in her case. She argues that she is entitled to present evidence rebutting the voluntary act element of driving a vehicle, thus the

testimony of Sergeant Pastian[2] as either an expert witness or lay witness is relevant and admissible in this case.

¶52 The State argues that because evidence of involuntary intoxication and automatism is not relevant to a DUI charge under Montana law, the Municipal Court acted within its discretion when it excluded the officers' testimony, and the District Court correctly affirmed the Municipal Court.

¶53 Relevant evidence that is not unfairly prejudicial is admissible. M. R. Evid. 402, 403. In addition, the Montana Rules of Evidence allow for the admission of both lay opinion and expert opinion testimony. *State v. Larson*, 2010 MT 236, ¶ 38, 358 Mont. 156, 243 P.3d 1130. Lay witness testimony in the form of opinions or inferences is permitted under M. R. Evid. 701 on the following bases:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

And, expert opinion testimony is admissible under M. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

¶54 Thus, M. R. Evid. 702 requires a party to lay a foundation that their expert has adequate knowledge, skill, experience, training or education upon which to base an

---

[2] In her brief on appeal, Paffhausen noted that she has decided not to call Chief Muir as a witness.

18

opinion. *Larson*, ¶ 43 (citing *State v. Stout,* 2010 MT 137, ¶ 59, 356 Mont. 468, 237 P.3d 37. Expert witnesses must demonstrate that they possess specialized knowledge which distinguishes them from lay persons. *Larson*, ¶ 43. Moreover, we have held that an expert witness may rely on evidence that is otherwise inadmissible, including hearsay, in forming their opinion. *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 34, 314 Mont. 303, 65 P.3d 570 (citing *Lynch v. Reed*, 284 Mont. 321, 333-34, 944 P.2d 218, 226 (1997)).

¶55 In *Larson*, we held that the trial court erred in admitting expert opinion testimony from two law enforcement officers regarding Larson's ability to drive due to drug impairment. *Larson*, ¶ 48. We concluded in that case that there was inadequate foundation for qualifying the officers as expert witnesses. *Larson*, ¶¶ 44, 46. Both officers testified that they were not drug recognition experts as approved by the National Highway Traffic Safety Administration, and one officer testified that he had no experience with impaired driving due to marijuana consumption. *Larson*, ¶ 45. The other officer testified that he lacked field experience dealing with marijuana impairment, and although he stated that he had been involved in five or six marijuana cases, he acknowledged that in three of those cases, an outside drug recognition expert had been called in to make impairment determinations. *Larson*, ¶ 47. Consequently, we held in *Larson* that the foundation regarding the officers' training and experience was insufficient to demonstrate the special training or education, and adequate knowledge upon which to base an expert opinion as required by M. R. Evid. 702. *Larson*, ¶ 48.

¶56 Similarly, in *State v. Nobach*, 2002 MT 91, ¶¶ 25-26, 309 Mont. 342, 46 P.3d 618, we found insufficient foundation to allow an officer to offer expert opinion testimony regarding the ability to drive a vehicle while impaired by drugs because the officer only had three days of academy drug training and no training or experience with the specific type of prescription drugs used by the defendant. Conversely, in *State v. Gregoroff*, 287 Mont. 1, 4, 951 P.2d 578, 580 (1997), we found a sufficient foundation had been laid for expert testimony regarding accident causation, because the officer had been in law enforcement for eight years, she had attended two two-week traffic investigation courses, she had specialized training at the Highway Patrol Academy in DUI investigation, and she had taught courses on accident investigation at other academies.

¶57 Based on the foregoing, we hold in this case that if Paffhausen is able to lay the proper foundation, she may elicit from Sergeant Pastian the results of his investigation into Paffhausen's claim that she was unknowingly drugged on the night in question. We further hold that if Paffhausen is able to lay an adequate foundation for calling Sergeant Pastian as an expert witness on the subject, she may also elicit from Sergeant Pastian testimony on the use of "date rape" drugs in the Missoula area.

¶58 Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON


We Concur:

/S/ MIKE McGRATH

20

/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶59    I believe the Court's analysis is flawed in that it is contrary to the relevant statutes, the accompanying Criminal Law Commission Comments, the decisions of this Court, and the decisions of the state which is the source of our criminal code. I further believe that this decision will have the effect of subverting the Legislature's clear intention that DUI is to be an absolute liability offense.

### *The Voluntary Act Statute, § 45-2-202, MCA, and Absolute Liability.*

¶60    The Court matter-of-factly holds that a voluntary act is an element of every offense, citing § 45-2-202, MCA, and thereafter premises the entire opinion on that assumption, without considering whether absolute-liability offenses are of a different character. Opinion, ¶ 25. Relying on *State v. Leprowse*, 2009 MT 387, 353 Mont. 312, 221 P.3d 648, the Court offers the new proposition that "'absolute liability' does not necessarily mean absolute." Opinion, ¶ 32. However, it is clear that the Legislature treats absolute-liability crimes separately and did not intend for the voluntary act statute to apply to absolute-liability crimes.

¶61    The voluntary act statute, § 45-2-202, MCA, provides:

A material element of every offense is a voluntary act, which includes an omission to perform a duty that the law imposes on the offender and that the offender is physically capable of performing, except for deliberate homicide under 45-5-102(1)(b) for which there must be a voluntary act only as to the underlying felony. Possession is a voluntary act if the offender knowingly procured or received the thing possessed or was aware of the offender's control of the thing for a sufficient time to have been able to terminate control.

We have applied this statute in cases involving crimes with a mental state element, *see e.g. State v. Korell*, 213 Mont. 316, 690 P.2d 992 (1984) (attempted deliberate homicide and aggravated assault); *State v. Zampich*, 205 Mont. 231, 667 P.2d 955 (1983) (mitigated deliberate homicide), but have never done so in the context of absolute-liability crimes and, particularly, in the context of traffic offenses. Our silence in this regard is consistent with the Legislature's intent.

¶62    The voluntary act statute was originally enacted in 1973 and codified as § 94-2-102, R.C.M. 1947. The Annotator's Note to § 94-2-102, R.C.M. 1947 provides: "Because criminal liability requires a voluntary act, *except in certain statutes where absolute liability is imposed*, it is a defense that act was done involuntarily . . . such as during a seizure." Annotator's Note, Mont. Crim. Code of 1973, Annotated at 90 (1973 ed.) (emphasis added and citation omitted). Further, the Criminal Law Commission provided similar instruction about this statute: "The minimum elements of any offense (*other than one in which absolute liability for an act alone is imposed*) are described as a voluntary act and a specified state of mind." Revised Criminal Commission Comment, Mont. Crim. Code of 1973 at 90 (emphasis added). In 1979, the Montana Criminal Code was reorganized using a new numbering system and the voluntary act statute was

22

re-codified at § 45-2-202, MCA. However, no changes were made to the substance of the statute. Preface, Mont. Crim. Code of 1973 at i (1980 ed.).[1]

¶63 The Legislature was thus careful not to impose a "voluntary act" requirement in absolute liability offenses—absolute really does mean absolute. That makes common sense; of necessity, "voluntarily" is a kind of mental state and is thus inconsistent with absolute liability. Black's Law Dictionary, Seventh Edition, defines "voluntary" as "[d]one by design or intention <voluntary act>." As the Court notes, the Legislature declared DUI to be an absolute offense. Opinion, ¶ 19. Therefore, the State need not prove that Paffhausen acted voluntarily, and Paffhausen is not entitled to offer evidence that she did not act voluntarily. *See State v. Weller*, 2009 MT 168, ¶ 8, 350 Mont. 485, 208 P.3d 834 (to establish DUI, the State was "not required to prove Weller's mental state" and, thus, consideration of Weller's "involuntary intoxication" defense was not necessary). The Court's insertion of a mental state requirement into this absolute liability offense essentially guts the absolute nature of the offense.

### *Criminal Responsibility of Intoxicated Persons: § 45-2-203, MCA.*

¶64 Paffhausen is careful to argue that she does not seek to introduce evidence that she lacked the mental state to commit DUI, acknowledging that DUI does not include a mental state. Instead, she argues that she should be allowed "to present evidence that she was unknowingly drugged as it relates to the voluntary act element of DUI." Opinion,

---

[1] The Criminal Law Commission Comments provide interpretational guidance and in this case are particularly helpful because the voluntary act statute remained substantially untouched since its passage in "Criminal Code of 1973." *Compare* § 94-2-102, R.C.M. (1973) *with* § 45-2-202, MCA (2011). The only substantive change came in 1987 when the Legislature amended the statute to include the clause regarding felony murder, § 45-5-102(1)(b).

¶ 15. However, Montana law specifically prohibits the use of intoxication for this purpose. Thus, even assuming *arguendo* that the Court is correct in concluding that a voluntary act is a necessary element of an absolute-liability offense, it nonetheless errs by reasoning that involuntary intoxication may be offered to negate the act element.

¶65 Montana's statute on criminal liability for intoxicated persons, § 45-2-203, MCA, provides:

> *A person who is an intoxicated condition is criminally responsible for the person's conduct, and an intoxicated condition is not a defense to any offense* and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant proves that the defendant did not know that it was an intoxicating substance when the defendant consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.

(Emphasis added.) The statute has independent clauses which are critical to its application. The first clause mandates that an intoxicated person is criminally responsible for her "conduct." Conduct is defined as "an act or series of acts and the accompanying mental state." Section 45-2-101(15), MCA. The beginning of the second clause reinforces the first clause, adding the prohibition that "an intoxicated condition is not a defense to *any offense.*" (Emphasis added.) The plain wording of this provision broadly prohibits the use of intoxication as a defense to any charge. If the statute stopped there, an intoxicated defendant would always be criminally responsible for both her "acts" and "accompanying mental state." Section 45-2-101(15), MCA. However, the statute continues by carving out a narrow exception, permitting a defendant to negate *the mental state element* by proving she did not know she "consumed, smoked, sniffed, injected, or otherwise ingested" a substance which was intoxicating, or, in other words,

24

that the intoxication was involuntary. A careful reading of the statute thus allows for only one conclusion: an intoxicated condition is prohibited as a defense to all offenses, except that involuntary intoxication may be offered as a defense only to the *mental state element*. Stated another way, this statute does not permit a defendant to negate an *act element* by submitting evidence of involuntary intoxication, as Paffhausen is attempting to do here.

¶66 Our precedent has adhered to this reading of § 45-2-203, MCA. In *Weller*, the defendant appealed his DUI conviction, arguing that the district court erred by refusing to include a jury instruction on involuntary intoxication based upon his assertion that he unknowingly drank punch that had been spiked with alcohol. *Weller*, ¶ 4. We turned to § 45-2-203, MCA, and the attendant Commission Comments, and concluded that the statute only allowed the use of involuntary intoxication as a defense if the crime included a mental state element. *Weller*, ¶ 7. Because DUI was an absolute liability offense and did not include a mental state element, we affirmed the conviction. *Weller*, ¶¶ 8-9.

¶67 The Court errs by failing to acknowledge § 45-2-203, MCA, and our precedent applying that provision.

### Illinois, the source state for Montana's Criminal Code, Prohibits Evidence of Involuntary Intoxication as a Defense to DUI.

¶68 The Court references cases from Texas, North Carolina, and California, but these jurisdictions have no direct connection to Montana's statutes governing voluntary act or criminal responsibility for conduct while intoxicated. Rather, Montana borrowed both of these provisions from Illinois. *See* Sections 45-2-202 and 45-2-203, MCA, Criminal Law

25

Commission Comments. Because the "Montana Criminal Code is modeled after the Illinois Criminal Code," *State v. Cole*, 226 Mont. 377, 379, 744 P.2d 526, 527 (1987), we have repeatedly turned to Illinois for guidance in interpreting our criminal statutes. *See State v. Murphy*, 174 Mont. 307, 310, 570 P.2d 1103, 1105 (1977) (accountability statute); *State v. Gollehon*, 262 Mont. 1, 26-27, 864 P.2d 249, 265 (1993) (same); *State v. Hernandez*, 213 Mont. 221, 224, 689 P.2d 1261, 1262-63 (1984) (theft statute); *State v. Bush*, 195 Mont. 475, 479, 636 P.2d 849, 851 (1981) (solicitation statute); *State v. Reiner*, 179 Mont. 239, 247, 587 P.2d 950, 955 (1978) (justifiable use of force statute); *State v. Chatriand*, 243 Mont. 375, 377, 792 P.2d 1107, 1108-09 (1990) (suppression of evidence statute).

¶69    Decisions from Illinois courts are consistent with reading § 45-2-203, MCA, as prohibiting involuntary intoxication as a defense to DUI. While Illinois permits the defense of automatism for some crimes, *see Illinois v. Grant*, 377 N.E.2d 4, 8 (Ill. 1978) (aggravated battery and obstructing a police officer), it prohibits the use of involuntary intoxication as a defense to DUI. *Illinois v. Teschner*, 394 N.E.2d 893, 895 (Ill. App. 1979). Illinois courts have reasoned that this difference is necessary to carry out the legislative intent of DUI laws to ensure motorist safety:

> [T]he proper regulation of traffic and traffic accidents requires the imposition of absolute liability. This is especially so in the case of driving while intoxicated. To require a mental state would raise the possibility of an involuntary intoxication defense. *While involuntary intoxication is a proper defense to most crimes . . . to allow such a defense to a charge of driving while intoxicated would result in the inadequate protection of the public from the dangers of intoxicated drivers*.

26

*Teschner*, 394 N.E.2d at 895 (internal citation omitted; emphasis added).[2]

¶70 The Legislature in § 45-2-203, MCA, mandated that intoxicated persons are criminally liable for their acts. It is especially important to adhere to this command in the context of the offense of DUI. Paffhausen claims she should not be held accountable because her intoxication was the result "of someone's act besides her own." Opinion, ¶ 15. Nonetheless, in an intoxicated condition, she climbed into her vehicle, started the engine, and commenced to drive in a dangerous manner. This danger has prompted courts in Illinois, the source state for our statutes, to reject efforts to defend against DUI on the grounds of involuntary intoxication.[3]

> ***Prohibition of an Involuntary Intoxication Defense to DUI is not inconsistent with the Legislatively-mandated Compulsion Defense.***

¶71 The Court reasons that the defense of involuntary intoxication should be permitted because we have previously approved of the defense of compulsion in DUI cases. The significant differences between the defenses, however, warrant the inclusion of compulsion and the exclusion of involuntary intoxication in DUI cases.

---

[2] Illinois' voluntary act statute has remained unchanged from 1961 to present. *Compare* Ill. Comp. Stat. Ann. Title 38, §§ 4-1 and 4-2 (1961) *with* Ill. Comp. Stat. 720 §§ 5/4-1 and 5/4-2 (2012).

[3] Another problem in the Court's analysis is that the cases cited by the Court for the proposition that automatism should be a defense to absolute-liability offenses do not involve absolute liability offenses. *See Mendenhall v. Tex.*, 77 S.W.3d 815 (Tex. Crim. App. 2002) (assault on a public officer); *Cal. v. Wilson*, 427 P.2d 820 (Cal. 1967) (murder); *N.C. v. Fields*, 376 S.E.2d 740 (N.C. 1989) (first-degree murder); *State v. Korell*, 213 Mont. 316, 690 P.2d 992 (1984) (attempted deliberate homicide and aggravated assault). Automatism in these contexts is a different issue, because § 45-2-202, MCA, requires a voluntary act for crimes that are not absolute-liability offenses.

27

¶72 Other courts have reasoned that it is logical to permit the compulsion defense while disallowing an automatism defense. *See e.g. N.M. v. Gurule*, 252 P.3d 823 (N.M. App. 2011). In *Gurule*, the defendant alleged she had become involuntarily intoxicated after drinking "tea" that her friend made for her. *Gurule*, 252 P.3d at 825. Unbeknownst to the defendant, the "tea" was actually a "hot toddy" that contained "more than one shot of bourbon." *Gurule*, 252 P.3d at 825.[4] Later, the defendant was arrested for drunk driving. *Gurule*, 252 P.3d at 825. At trial, the court rejected the defendant's jury instruction on involuntary intoxication, ruling that the defense was "inapplicable" to strict-liability crimes. *Gurule*, 252 P.3d at 825. The defendant appealed this ruling, arguing that because New Mexico courts recognized the affirmative defense of "duress" for strict-liability drunk driving charges, it would be "inconsistent to not allow involuntary intoxication as a defense." *Gurule*, 252 P.3d at 828. The court rejected this argument, reasoning that the two affirmative defenses had significant differences in application and effect:

> Examining the differences between the justifications for duress and involuntary intoxication, it follows that duress can be a defense to a strict liability crime while involuntary intoxication cannot. Strict liability crimes, by definition, do not require criminal intent. Involuntary intoxication is only a defense to the extent that it impairs the ability to form intent. As such, it would be illogical to allow an involuntary intoxication defense to a strict liability crime because the mental state of the defendant is irrelevant for conviction. Therefore, involuntary intoxication is not a defense to a strict liability crime because it is irrelevant in the strict liability context as to whether the defendant had intent to commit the prescribed act.

---

[4] This is the classic DUI defense—"Somebody spiked my drink"—that we rejected as a matter of law in *Weller*.

Duress, on the other hand, is available as a defense when the defendant committed the prescribed act, with the requisite intent, in order to avoid a harm of greater magnitude. The defendant, making a duress defense, does not argue lack of intent because of duress and, instead, essentially concedes the commission of the prescribed act with the requisite intent, but argues that the act was justified. Therefore, because duress is not based on the principle that a defendant's intent is negated, it does not contain the same logical fallacy as an involuntary intoxication defense in the strict liability context.

*Gurule*, 252 P.3d at 829 (internal citations, quotations, and brackets omitted). The New Mexico court came to the common-sense conclusion that an affirmative defense that negates the mental state is "irrelevant" to strict-liability crimes, whereas an affirmative defense that excuses the commission of a crime because it was justified under the circumstances is relevant to strict-liability crimes.

¶73　This reasoning is especially persuasive given the command of § 45-2-203, MCA, that involuntary intoxication is only a defense to the mental state element of an offense. Just like New Mexico's duress defense, Montana's affirmative defense of compulsion excuses the defendant's conduct—even though that conduct *satisfied* the elements of the offense—because the offense was justified under the circumstances. *See* Criminal Commission Comments to § 45-2-212, MCA ("Compulsion, coercion, or duress is another long-recognized basis for finding a person not guilty of an offense charged, although his conduct appears to be within the definition of the offense."). It was logical for the Montana Legislature to allow a defense that excuses illegal behavior done so as to prevent a harm of greater magnitude (compulsion), § 45-2-212, MCA, while excluding a defense that merely negates an element of the crime without regard to public safety (involuntary intoxication), § 45-2-203, MCA.

29

¶74 Finally, it should be emphasized the compulsion defense has been codified by the Montana Legislature. Section 45-2-212, MCA. The defense which Paffhausen seeks to offer has not. The only legislative codification of the involuntary intoxication defense, § 45-2-203, MCA, expressly prohibits the use of involuntary intoxication except to negate the mental state. As an absolute liability offense, DUI does not have a mental state. Simply put, involuntary intoxication is "irrelevant" to absolute-liability crimes in Montana. *Gurule*, 252 P.3d at 829.

### *Holding Paffhausen Responsible for Driving Under the Influence is Not Unduly Harsh.*

¶75 The Court reasons that prohibiting Paffhausen's "involuntary act" defense could lead to the harsh result of a person being punished for acts she was not conscious of. Opinion, ¶ 33. I disagree that this is an unduly harsh result, either under the facts of this case or in comparison to other scenarios in which DUI may be charged.

¶76 First, as we have acknowledged, "[d]runk driving legislation is intended to prohibit drunken operation under any and all circumstances. The act of driving a vehicle under the influence of alcohol or drugs, or both, is itself the crime." *State v. McDole*, 226 Mont. 169, 174, 734 P.2d 683, 686 (1987) (internal quotation marks and citations omitted). Secondly, driving is not a right, but a privilege to be undertaken only when the sobriety of the driver is assured. This is critical for the safety of our citizens. Here, Paffhausen was stopped because she had run through a stop sign and prematurely slammed on her brakes at another stop sign. Fortunately, Paffhausen did not kill or injure someone, but that damage would have been no less painful had Paffhausen become

30

intoxicated unwittingly instead of voluntarily. Affirming Paffhausen's conviction would be no harsher, in my view, than a DUI conviction for sleeping off intoxication in a non-running car sitting in a parking lot. *See e.g. State v. Updegraff*, 2011 MT 321, ¶ 1, 363 Mont. 123, 267 P.3d 28 (defendant asleep in car at fishing access site); *State v. Schwein*, 2000 MT 371, ¶ 6, 303 Mont. 450, 16 P.3d 373 (defendant asleep in vehicle by saloon). Undoubtedly, Paffhausen posed more of a danger to the public than these defendants did. Holding Paffhausen responsible is harsh only insofar as it furthers the purpose of DUI legislation.

### *Practical Implications of Today's Decision.*

¶77 I believe that the practical effect of the Court's decision will be detrimental. The Court now permits a defendant, under the name of a "voluntary act" defense, to introduce any kind of evidence that can be mustered to prove that she did not drive "voluntarily"— in effect, permitting mental state evidence to be in play. This may open the door to all manner of "I didn't know" defenses, essentially overturning the Legislature's determination to make DUI an absolute liability offense and our previous cases based thereon. The Court attempts to corral this potential by requiring a new pre-trial hearing process that already over-busy courts of limited jurisdiction will have to conduct. Opinion, ¶¶ 35-38. These pre-trial assessments will, of course, be a new basis for appeal.

¶78 As the New Jersey Supreme Court reasoned in holding that the automatism defense was inapplicable to DUI charges, the involuntary intoxication defense has the likelihood to lead to "pretextual defenses." *N.J. v. Hammond*, 571 A.2d 942, 948 (N.J. 1991) ("This kind of defense has every potential for being pretextual, and is the kind of

31

tendentious defense the Legislature sought to discourage . . . ."); *see also* Meghan Paulk Ingle, *Law on the Rocks: The Intoxication Defenses are Being Eighty-Sixed*, 55 Vand. L. Rev. 607, 616 (2002) (survey of case law reveals few examples of effectively made intoxication defenses). Yet, we are forging ahead. My primary concern as a jurist is the legal errors in the Court's decision. Beyond that, I am troubled by what the Court's decision means for our state's continuing struggle with drunk driving and the already difficult problem that DUI cases present for our courts.

¶79  I would affirm the District Court.


/S/ JIM RICE


Justice Patricia O. Cotter and Justice Beth Baker join in the dissenting Opinion of Justice Rice.


/S/ PATRICIA COTTER
/S/ BETH BAKER