[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Ireland,* Slip Opinion No. 2018-Ohio-4494.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4494

THE STATE OF OHIO, APPELLANT, *v.* IRELAND, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Ireland,* Slip Opinion No. 2018-Ohio-4494.]

*Criminal law—Affirmative defenses—Trial court did not create unconstitutional shift of state's burden to prove all elements of offense beyond reasonable doubt when court required defendant-appellee to prove his blackout defense by a preponderance of evidence—Court of appeals' reversal of appellee's conviction reversed and cause remanded.*

(No. 2017-0344—Submitted April 11, 2018—Decided November 8, 2018.)

APPEAL from the Court of Appeals for Franklin County, No. 15AP-1134, 2017-Ohio-263.

_____

FISCHER, J.

{¶ 1} In this case, we are presented with the issue whether the defense of blackout is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. We conclude that blackout is an affirmative

defense pursuant to R.C. 2901.05(D)(1)(b) and that requiring a defendant to prove this affirmative defense by a preponderance of the evidence does not violate the defendant's right to due process. Accordingly, we reverse the judgment of the Tenth District Court of Appeals and remand the cause to that court for consideration of the remaining assignments of error.

## I. PROCEDURAL HISTORY

{¶ 2} The Franklin County Grand Jury indicted appellee, Darin K. Ireland, on one count of felonious assault in violation of R.C. 2903.11. Ireland pleaded not guilty, and the case proceeded to a jury trial.

{¶ 3} During trial, Ireland called James P. Reardon, Ph.D., a forensic psychologist, as an expert witness. Prior to trial, but after the incident, Dr. Reardon had diagnosed Ireland with posttraumatic stress disorder ("PTSD"). Dr. Reardon opined that Ireland had experienced "a dissociative episode" due to his PTSD and that Ireland's "consciousness, his memory, his decision-making capability for those instants, those moments, [were] compromised." Dr. Reardon asserted that Ireland was "acting automatically in a dissociative episode."

{¶ 4} Ireland argued that Dr. Reardon's testimony supported his request for the following blackout instruction:

> **BLACKOUT**: Where a person commits an act while unconscious as in a blackout due to disease or injury, such an act is not a criminal offense even though it would be a crime if such act were the product of the person's volition.
>
> If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the state of its burden of establishing by the required weight of the testimony that the act was knowingly committed.

2

(Capitalization and boldface sic.)

{¶ 5} The state objected to Ireland's request for the blackout jury instruction, arguing that the instruction was not warranted. The state asserted that Ireland may have been voluntarily intoxicated at the time of the incident and that a blackout defense was therefore precluded. The state argued that if the trial court did provide the jury with a blackout instruction, the instruction should state that blackout is an affirmative defense. Ireland objected and argued that it would be improper to instruct the jury that the defendant had the burden of proving the blackout defense, because the standard jury instruction on the blackout defense does not include affirmative-defense language and the blackout defense specifically addresses the concept of criminal liability under R.C. 2901.21. *See Ohio Jury Instructions*, CR Section 417.07 (2008). Ireland maintained that the two instructions could not be reconciled.

{¶ 6} The trial court gave the jury the standard blackout instruction but first instructed the jury that blackout is an affirmative defense:

> The burden of going forward with the evidence of blackout and the burden of proving an affirmative defense is upon the defendant. He must establish such a defense by a preponderance of the evidence.
>
> * * *
>
> If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged.
>
> Where a person commits an act while [unconscious], as in a coma, blackout, or convulsion due to heart failure, disease, sleep, or

injury, such an act is not a criminal offense even though it would be a crime if such act were the product of a person's will or volition.

If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the State of its burden of establishing by the required weight of the testimony that the act was knowingly committed.

* * *

Reflexes, convulsions, body movements during unconsciousness or sleep and body movements that are not otherwise a product of the act's [sic, actor's] will or volition are involuntary acts.

{¶ 7} After deliberations, the jury found Ireland guilty of felonious assault. The trial court sentenced Ireland to six years of imprisonment.

{¶ 8} Ireland appealed, raising five assignments of error. He first asserted that the trial court committed structural error by instructing the jury that blackout is an affirmative defense. Addressing Ireland's structural-error argument, the state argued that blackout is an affirmative defense and that the trial court properly instructed the jury that Ireland had the burden of proving his blackout defense by a preponderance of the evidence.

{¶ 9} The Tenth District Court of Appeals held that the trial court committed structural error by instructing the jury that Ireland had the burden of proving his blackout defense. The appellate court determined that pursuant to the plain language of R.C. 2901.21(A), voluntariness is an essential element of a criminal offense. "[H]aving found that the state constitutionally bears the burden of proving beyond a reasonable doubt that the defendant engaged in a voluntary act," the court could not "agree that the defendant must prove by a preponderance

4

of the evidence that his or her actions were involuntary." 2017-Ohio-263, __ N.E.3d __, ¶ 39. The appellate court further determined that Ireland's blackout defense was not an affirmative defense because the "issue of voluntariness is not an excuse or justification," *id.* at ¶ 40, and "a defense challenging voluntariness does not involve evidence peculiarly within the knowledge of the accused," *id.* at ¶ 41. The appellate court reversed Ireland's conviction and deemed his remaining assignments of error moot.

{¶ 10} The state appealed, and we accepted review of the state's sole proposition of law: "The defense of blackout or automatism is an affirmative defense that must be proven by a defendant by a preponderance of the evidence, because it involves an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." *See* 150 Ohio St.3d 1451, 2017-Ohio-8136, 83 N.E.3d 938.

## II. ANALYSIS

{¶ 11} In this case, we are presented with three issues: (1) Under R.C. 2901.05(D)(1)(b), is "blackout" an affirmative defense that the defendant must prove by a preponderance of the evidence? (2) Pursuant to R.C. 2901.21(A), is voluntariness an essential element of a criminal offense? And (3) does requiring the defendant to prove an affirmative defense that also challenges the state's evidence that the act was voluntary shift the burden of proof from the state to the defendant in violation of the defendant's right to due process? Because these issues are questions of law, we conduct a de novo review. *See State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 9.

### A. Defense at Issue

{¶ 12} As an initial matter, it is helpful to determine which defense is at issue in this case. The state's proposition of law uses the term "automatism." Ireland first introduced the term "automatism" in his brief to the Tenth District Court of Appeals. Ireland used the term "automatism" interchangeably with the

term "unconsciousness" and argues that the two terms are synonymous. The appellate court appears to have implicitly adopted Ireland's interchangeable usage. *See* 2017-Ohio-263, __ N.E.3d __, at ¶ 27 and fn. 4.

{¶ 13} Ireland, however, did not assert "automatism" as a defense at the trial level, and the term does not appear in R.C. 2901.05 or in the jury instruction provided by the trial court. Regardless of whether "automatism" is synonymous with "unconsciousness," the defense of blackout and the instructions relating to blackout are the only issues before this court. To the extent that an automatism defense is distinct from the blackout defense, arguments regarding an automatism defense are not properly before us at this time.

### 1. R.C. 2901.05(D)(1)(b) and blackout

{¶ 14} Under Ohio law, an affirmative defense is either a "defense expressly designated as affirmative," R.C. 2901.05(D)(1)(a), or a "defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," R.C. 2901.05(D)(1)(b). The General Assembly did not expressly designate blackout as an affirmative defense; thus, R.C. 2901.05(D)(1)(a) is not at issue in this case.

{¶ 15} The court of appeals reversed Ireland's conviction partly because it determined that blackout does not meet the definition of "affirmative defense" provided in R.C. 2901.05(D)(1)(b).

{¶ 16} The state contends that Ireland's defense is not actually blackout but the functional equivalent of a "diminished capacity" defense, which Ohio does not recognize as a valid defense. *See State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 66 ("Our jurisprudence definitively states that the partial defense of diminished capacity is not recognized in Ohio"). However, the state did not object on this basis in the trial court. The state had "no objection" to Ireland's calling Dr. Reardon as an expert witness, affirmatively told the trial court that it was not requesting that the court strike Dr. Reardon's testimony, and agreed that

6

there was "no objection to anything on the standards." The state did object to the defense-proposed blackout instruction, even as an affirmative defense, only because it argued that there was no evidence that Ireland had blacked out. The state also did not argue in the court of appeals that Ireland was presenting the equivalent of a diminished-capacity defense. The state's actions go beyond a simple forfeiture of the argument that Ireland raised a diminished-capacity defense. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21 (forfeiture is the failure to timely assert a right or object to an error). The state, at the trial level, intentionally declined to assert any argument beyond the argument that blackout was not supported by the evidence; therefore, the state waived the argument that Ireland's blackout defense was actually a diminished-capacity defense. *See id.* at ¶ 20 (waiver is the intentional relinquishment or abandonment of a known right). Thus, we will not address the state's argument regarding diminished capacity in this case. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15-16; *United States. v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' * * * ").

{¶ 17} The state further argues that the appellate court's conclusion was in error because blackout is an excuse or justification that is peculiarly within the knowledge of the accused in support of which the accused can fairly be required to adduce evidence. The state supports its argument by citing decisions of several Ohio appellate courts, *e.g.*, *State v. LaFreniere*, 85 Ohio App.3d 840, 848-849, 621 N.E.2d 812 (11th Dist.1993); *State v. Mobley*, 5th Dist. Richland No. 2010-CA-0018, 2011-Ohio-309, ¶ 40-45, that treated blackout as an affirmative defense.

{¶ 18} Ireland argues that his blackout defense is a "failure of proof" defense and supports this argument by citing various out-of-state decisions and several treatises, *e.g.*, *State v. Hinkle*, 200 W.Va. 280, 286, 489 S.E.2d 257 (1996); 2 Wayne R. LaFave, *Substantive Criminal Law*, Section 9.4(b) (3d Ed.2017);

Joshua Dressler, *Understanding Criminal Law* 93-94 (7th Ed.2015). Ireland argues that the standard jury instruction on the blackout defense supports his argument that blackout is not an affirmative defense; Ireland notes that the jury instruction does not contain any reference to affirmative defenses. *See Ohio Jury Instructions*, CR Section 417.07.

{¶ 19} While the caselaw from other states, criminal-law treatises, and other educational sources may help one to understand the various public-policy arguments regarding why blackout should or should not be considered an affirmative defense, these authorities are not helpful to our analysis. We are bound by the language of R.C. 2901.05(D)(1)(b) and must determine whether the defense of blackout meets the requirements of the statute: (1) an excuse or justification that is (2) peculiarly within the knowledge of the accused and (3) on which the accused can fairly be required to adduce supporting evidence.

### 2. *Application of R.C. 2901.05(D)(1)(b) requirements*

{¶ 20} In analyzing whether blackout constitutes an affirmative defense, we must first determine whether blackout is an "excuse" or "justification"; we conclude that blackout is an excuse. The General Assembly did not define "excuse" or "justification" in the Ohio Revised Code. Thus, those terms are "to be accorded [their] common, everyday meaning." *State v. Dorso*, 4 Ohio St.3d 60, 62, 446 N.E.2d 449 (1983). *Black's Law Dictionary* defines "excuse" as a "reason that justifies an act or omission or that relieves a person of a duty" or a "defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal." *Black's Law Dictionary* 688 (10th Ed.2014). "[J]ustification" is defined as a "lawful or sufficient reason for one's acts or omissions; any fact that prevents an act from being wrongful" or a "showing, in court, of a sufficient reason why a defendant acted in a way that, in the absence of the reason, would constitute the offense with which the defendant is charged." *Id.* at 997.

**{¶ 21}** The trial court provided the jury with the standard instruction on the blackout defense: "Where a person commits an act while [unconscious], as in a coma, *blackout*, or convulsion *due to* heart failure, *disease*, sleep, or *injury* * * *." (Emphasis added.) *See Ohio Jury Instructions*, CR Section 417.07. A blackout as a result of any one of the listed causes—heart failure, disease, sleep, or injury—is a reason used to explain why a defendant acted in certain manner. A blackout is a defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal. Therefore, blackout meets the definition of "excuse."

**{¶ 22}** A blackout excuse is "peculiarly within the knowledge of the accused," satisfying the second requirement of R.C. 2901.05(D)(1)(b), because only the accused could know or be able to describe his or her feelings and experiences during the alleged blackout.

**{¶ 23}** As for the third and final requirement of R.C. 2901.05(D)(1)(b), a defendant presenting a blackout defense can fairly be required to adduce evidence supporting the excuse. The accused will be aware of the circumstances surrounding his or her blackout and will not be disadvantaged if required to relay his or her version of events to the fact-finder. *See State v. Doran*, 5 Ohio St.3d 187, 193, 449 N.E.2d 1295 (1983) (it is not unfair to require the accused to adduce evidence supporting his alleged lack of predisposition to commit the charged offenses, in support of his affirmative defense of entrapment). The defendant can fairly be required to adduce evidence supporting his or her excuse in part because the defendant can (1) present the testimony of an expert witness, (2) call a lay witness, or (3) testify on his or her own behalf.

**{¶ 24}** Because the blackout defense meets all three requirements of R.C. 2901.05(D)(1)(b), we conclude that blackout is an affirmative defense.

**{¶ 25}** In this case, Ireland's blackout defense met all three requirements under R.C. 2901.05(D)(1)(b). Ireland's alleged PTSD dissociative episode fits

squarely within the definition of "excuse" as either a disease or an injury that justifies Ireland's actions in this case. Ireland's alleged PTSD dissociative episode was also "peculiarly within [his] knowledge." Only Ireland knows whether he was aware of the actions he took at the time of the incident; Ireland is the only person who could know the way that he felt and what he experienced during the alleged PTSD dissociative episode. Despite this, there were numerous ways in which Ireland could support his blackout defense, none of which are unfair to Ireland. Ireland used the testimony of an expert witness, Dr. Reardon, to demonstrate that Ireland had experienced a PTSD dissociative episode during his altercation with the victim. Therefore, Ireland's alleged blackout caused by a PTSD dissociative episode is, pursuant to R.C. 2901.05(D)(1)(b), an affirmative defense because it is an excuse peculiarly within his knowledge in support of which he could fairly be required to adduce evidence.

{¶ 26} Ireland's blackout defense, therefore, is not a failure-of-proof challenge—it is an affirmative defense that would allow Ireland to avoid liability even if the state produced sufficient evidence to support a conviction.

## B. Voluntary Act

{¶ 27} The General Assembly enacted R.C. 2901.21(A), modeled after Section 2.01(1) of the Model Penal Code (1962), to "codify the fundamental distinction between criminal misconduct on the one hand, and innocent conduct or accident on the other—that, generally, a person is not guilty of a criminal offense, unless he not only did a prohibited act, but had a certain guilty state of mind when he did it." Ohio Legislative Service Commission, *Proposed Ohio Criminal Code: Final Report of the Technical Committee to Study Ohio Criminal Law and Procedures* 40 (1971).

{¶ 28} R.C. 2901.21(A), the criminal-liability-and-culpability statute, states:

10

Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

(1) The person's liability is based on conduct that includes either *a voluntary act*, or an omission to perform an act or duty that the person is capable of performing;

(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.

(Emphasis added.)

**{¶ 29}** The court of appeals, in this case, held that voluntariness is an element of every criminal offense pursuant to R.C. 2901.21(A). The state argues that the prosecution should not be required to prove that the defendant was not in a blackout state, and that the appellate court's interpretation adds an additional element, beyond the actus reus and mens rea, for the state to prove. The state adds that voluntariness is not an element.

**{¶ 30}** "When construing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous." *MedCorp, Inc. v. Dept. of Job & Family Servs.*, 121 Ohio St.3d 622, 2009-Ohio-2058, 906 N.E.2d 1125, ¶ 9. We must give effect to the words used, refraining from inserting or deleting words. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988). " 'No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.' " (Brackets sic.) *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 19, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917).

**{¶ 31}** Because R.C. 2901.21(A) is clear and unambiguous, we apply the statute as written. This court has noted that "every criminal offense is made up of (1) *a voluntary act* or a failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state." (Emphasis added.) *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 16, citing R.C. 2901.21(A); *see also State v. Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶ 6, quoting R.C. 2901.21(A) ("In a criminal case, the state must prove that the accused engaged in 'a voluntary act * * *' with the 'requisite degree of culpability' for each element of the alleged offense in order to obtain a conviction"). As written, R.C. 2901.21(A) provides that for a person to be found guilty of a criminal offense, the person must have voluntarily committed a criminal act. We cannot ignore the fact that the word "voluntary" appears in the criminal-liability-and-culpability statute.

**{¶ 32}** The state argues that interpreting R.C. 2901.21(A) as including voluntariness as something that the state must prove imposes a new, additional burden on the state. We disagree.

**{¶ 33}** Voluntariness is not an essential element of the offense such that it must be charged in the indictment or addressed in the trial court's jury instructions, even if the need for the act to be voluntarily committed is stated in the statutory scheme; rather, a challenge to voluntariness is a defense. This conclusion is supported by the General Assembly's decision to define "voluntary act" in the negative: "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts," R.C. 2901.21(F)(2). Thus, while the state is required to present evidence that the defendant committed the criminal act voluntarily, and while the jury can weigh the state's evidence against the defendant's counter evidence, the defendant is nonetheless required to prove excuses that are peculiarly

within his knowledge in support of which he could fairly be required to adduce evidence by a preponderance of the evidence.

{¶ 34} Under the plain language of R.C. 2901.21(A)(1), the state must prove that the defendant acted voluntarily when committing a criminal act, but proof of the actus reus and mens rea is necessarily also evidence that the defendant acted voluntarily. Thus, the requirement that the state prove that the defendant acted voluntarily is not an additional element or burden on the state.

### C. Due Process

{¶ 35} Ireland argues that the trial court requiring him to prove his blackout defense by a preponderance of the evidence created an unconstitutional shift of the state's burden to prove all elements of the offense beyond a reasonable doubt. Ireland argues that this alleged burden shift violated his right to due process under the United States and Ohio Constitutions and violated the prohibition against cruel and unusual punishments contained in the Eighth Amendment to the United States Constitution. Because Ireland did not assert an Eighth Amendment challenge in the trial court or in the court of appeals, we do not address that argument. *See Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 15.

{¶ 36} The state argues that the General Assembly, as with the defenses of insanity and self-defense, may place the burden of persuasion on the defendant to prove an R.C. 2901.05(D)(1)(b) affirmative defense by a preponderance of the evidence. Relying on *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the state further argues that "it is constitutional to place the burden of persuasion on a defendant claiming a total mental incapacity to act voluntarily."

{¶ 37} In this case, we conduct a single analysis to address Ireland's due-process argument under the United States Constitution and the Ohio Constitution. While the Ohio Constitution is a document of independent force, *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus, the Due Course of Law Clause of Article I, Section 16 of the Ohio Constitution is

more often than not considered the functional equivalent of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15. *But see Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 34 (lead opinion) (noting that this court departed from the general rule in *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24). At this time, we see no reason, and Ireland provides no reason or caselaw to persuade us, to depart from the general rule that the Due Course of Law Clause of the Ohio Constitution and the Due Process Clause of the United States Constitution provide the same degree of protection in this particular case. Therefore, in this case, we apply the general rule to address Ireland's due-process argument.

**{¶ 38}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the defendant from conviction except upon proof beyond a reasonable doubt of "all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *accord see In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The United States Supreme Court has recognized that the state has the power to " 'regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson* at 201-202, quoting *Speiser* at 523 and *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934), respectively.

**{¶ 39}** As we determined above, voluntariness is not an essential element of felonious assault—the General Assembly defined "voluntary act" in the nature of a defense and chose not to include voluntariness in R.C. 2903.11(A). Therefore,

because voluntariness is not an essential element of felonious assault, we reject Ireland's argument asserting a due-process violation based on an unconstitutional burden shift of an essential element of the offense.

{¶ 40} But assuming arguendo that the trial court did require Ireland to prove an affirmative defense that tended to negate part of an element of the offense, Ireland still has not demonstrated a due-process violation. While the Due Process Clause prohibits states from requiring an accused to disprove an element of the crime charged, *see Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), a state does not violate the Due Process Clause by requiring the defendant to prove an affirmative defense by a preponderance of the evidence, even when the evidence used to prove the affirmative defense might also negate an element of the offense at issue, *see Leland v. Oregon*, 343 U.S. 790, 798-800, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (Oregon statute that required the accused to establish an insanity defense beyond a reasonable doubt did not violate the federal Due Process Clause); *Patterson* at 205-207 (New York law requiring that the defendant in a prosecution for second-degree murder prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter did not violate the federal Due Process Clause); *Martin*, 480 U.S. at 233, 107 S.Ct. 1098, 94 L.Ed.2d 267 (Ohio law that required the defendant to prove self-defense by a preponderance of the evidence did not violate the federal Due Process Clause).

{¶ 41} The statutes at issue, R.C. 2903.11(A) and 2901.05(A), do not require the defendant to negate any element of the offense of felonious assault. Rather, the General Assembly has provided that if the defendant presents a defense meeting the requirements listed in R.C. 2901.05(D)(1)(b) to be considered an affirmative defense, the defendant has the burden to prove the defense by a preponderance of the evidence.

{¶ 42} As demonstrated in this case, the trial court correctly assigned the burdens of the parties and emphasized that the state had the burden to prove all elements of the offense beyond a reasonable doubt. The court specifically instructed the jury that the state had the burden to prove every element beyond a reasonable doubt: "The defendant must be acquitted of an offense unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense." The court further instructed, "Before you can find the defendant guilty of felonious assault, you must find beyond a reasonable doubt that * * * the defendant knowingly caused serious physical harm to [the victim]."

{¶ 43} The trial court also instructed the jury, "If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged."

{¶ 44} The trial court properly instructed the jury that Ireland must prove his defense by a preponderance of the evidence; the trial court also properly instructed the jury that even if Ireland did not prove his defense by a preponderance of the evidence, the jury must determine whether the state proved each of the elements of felonious assault beyond a reasonable doubt.

{¶ 45} "The jury is presumed to have followed the court's instructions." *State v. Jones*, 91 Ohio St.3d 335, 344, 744 N.E.2d 1163 (2001). Hence, the trial court's instructions to the jury did not shift to Ireland the state's burden to prove each element of felonious assault beyond a reasonable doubt.

{¶ 46} Furthermore, so long as the state retains the burden to prove every essential element of the offense beyond a reasonable doubt, the defendant's due-process rights are not violated when the defendant is required to prove an affirmative defense by a preponderance of the evidence and the evidence presented by the defendant in support of the affirmative defense also attacks the state's case-in-chief. *See Martin*, 480 U.S. at 239, 107 S.Ct. 1098, 94 L.Ed.2d 267 (Powell, J.,

16

dissenting) ("The Court * * * seems to conclude that as long as the jury is told that the state has the burden of proving all elements of the crime, the overlap between the offense and defense is immaterial"). The trial court instructed the jury that the "evidence is all the testimony received from the witnesses, the exhibits admitted during the trial, and the facts agreed to by counsel" and that the jury is "the sole judge of the facts, the credibility of the witnesses, and the weight of the evidence." The jury was not instructed that it could consider Ireland's evidence only for Ireland's defense—the jury was instructed to consider all the evidence, weigh the evidence, and determine whether the state had met its burden beyond a reasonable doubt.

{¶ 47} Under *Martin*, the trial court's instructions did not violate Ireland's due-process rights because the jury was correctly instructed that the state had the burden to prove *all* elements of the offense beyond a reasonable doubt *and* because the evidence presented by Ireland that he blacked out went to both challenging the state's case-in-chief and supporting Ireland's affirmative defense.

{¶ 48} Because voluntariness is not an essential element of felonious assault and the trial court properly instructed the jury that the state had the burden of proving each element of the offense beyond a reasonable doubt, the trial court did not shift to Ireland the state's burden to prove an essential element of the offense charged. We conclude that no due-process violation occurred under either the Ohio Constitution or the United States Constitution and that the trial court did not commit error.

### III. CONCLUSION

{¶ 49} We conclude that blackout constitutes an affirmative defense as defined in R.C. 2901.05(D)(1)(b). While the evidence used to assert a blackout affirmative defense pursuant to R.C. 2901.05(D)(1)(b) may overlap with the evidence used to challenge the state's case-in-chief, this overlap does not create an impermissible burden shift and does not violate the defendant's right to due process.

Therefore, we reverse the judgment of the Tenth District Court of Appeals and remand the cause to that court for consideration of Ireland's remaining assignments of error.

Judgment reversed

and cause remanded.

O'DONNELL, J., concurs.

DEGENARO, J., concurs in judgment only, with an opinion joined by FRENCH, J.

O'CONNOR, C.J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**DEGENARO, J., concurring in judgment only.**

{¶ 50} I concur in the court's judgment reversing the judgment of the Tenth District Court of Appeals, which held that the trial court committed structural error by instructing the jury that "blackout" was an affirmative defense. I would reverse the Tenth District's judgment because its holding was premised on the incorrect notion that the trial court used "blackout" in appellee Darin Ireland's specific case to connote an unconscious, involuntary act as contemplated in R.C. 2901.21(A)(1) and (F)(2). In the actual context of Ireland's case, the term "blackout" was used as a placeholder for his insanity-related defense.

{¶ 51} Because Ireland's case did not actually involve an unconsciousness claim under R.C. 2901.21, his argument in the Tenth District regarding the proper burden of proof for such a claim was hypothetical and solicited an advisory opinion. We provide no service to trial judges and litigants in Ohio by issuing our own advisory opinion about the burden of proof that would apply to a defense that was not substantively part of Ireland's jury charge. I respectfully disagree with the premise of both the lead opinion and the dissent that we should reach the question of what burden of proof would apply to an unconsciousness claim.

**{¶ 52}** The factual and procedural context of Ireland's case reveals the nature of his defense and the way in which it was able to reach the jury. Ireland was charged with felonious assault after he severely beat Drew Coen in the parking lot of a bar. During the discovery process, Ireland provided the state with a forensic-psychological-examination report prepared by forensic psychologist James Reardon, Ph.D., who opined that Ireland suffered from posttraumatic stress disorder ("PTSD") and dissociative episodes.

**{¶ 53}** The state filed three motions in response, arguing that either Ireland's evidence should be excluded as unfairly prejudicial pursuant to Evid.R. 403 or else the state should be given the opportunity for rebuttal by conducting its own psychological evaluation and/or presenting other-acts evidence pursuant to Evid.R. 404(B) (evidence of other acts may be admitted to prove motive, intent, or absence of mistake or accident). Although the state pointed out that Ireland's defense was akin to an insanity defense, the state did not argue that Ireland was attempting to present an impermissible diminished-capacity defense. Further, the state was not successful in its motions.

**{¶ 54}** At trial, the state presented evidence that Ireland spent a portion of the evening leading up to the assault at a local neighborhood bar, where he was a regular customer. At approximately 1:00 a.m., Ireland was among a group of people who were smoking and chatting outside the entrance to the bar. Coen was leaving the bar at that time, when Ireland's friend, Tyler Thrash, attacked Coen and put him in a choke hold.

**{¶ 55}** Ireland helped to pull Thrash away, admonishing him to get off of Coen. But after Thrash indicated that Coen had inappropriately touched Ireland's wife, Ireland himself began to attack Coen, saying, "Whose woman did you touch? You touched my woman?" Ireland proceeded to knock Coen unconscious and then kicked and stomped on Coen's head over the course of five to ten minutes. Ireland's many blows caused serious damage, breaking Coen's nose, jaw, and orbital bone.

**{¶ 56}** Because of immediate medical attention, Coen survived the assault. During Coen's initial hospitalization, surgeons wired his jaw shut and installed three metal plates, along with brackets and screws, to allow the bones of his skull to fuse back together. He underwent two additional surgeries over the following six months. He slowly recovered from blurred vision, vertigo, and damage to his knee over the year following the assault. The nerve damage to his face, though, was permanent.

**{¶ 57}** The sole witness called by the defense was Dr. Reardon, the forensic psychologist who had evaluated Ireland in preparation for trial. Reardon opined that Ireland had PTSD with dissociative symptoms as well as an alcohol-use disorder with probable alcoholic blackouts. Reardon explained that a dissociative episode "is an alteration in consciousness, memory, and the ability to make * * * rational decisions," during which a person acts "habitually" rather than "consciously." Reardon distinguished a dissociative episode from an alcoholic blackout by explaining that a dissociated person is generally in a state of "hyperarousal" whereas a person experiencing an alcoholic blackout can range from apparently functioning to "completely out, literally blacked out, passed out."

**{¶ 58}** The nature of Ireland's defense and the jury instructions appropriate for his defense were repeatedly discussed throughout the proceedings. The trial court expressed concern that Ireland appeared to be presenting an insanity defense, which would require the court to stop the trial and refer Ireland for an evaluation of his mental condition at the time of the incident, to explore a possible plea of not guilty by reason of insanity ("NGRI"). The court ultimately allowed the trial to proceed and included an instruction regarding blackout in the jury charge, over the state's objection.

**{¶ 59}** The trial court also determined, however, that Ireland had not presented sufficient evidence of unconsciousness within the meaning of R.C. 2901.21(F)(2) to support providing a blackout instruction that indicated

unconsciousness as contemplated in that provision. The court explained that although Ireland's proposed blackout definition connoted unconsciousness "like sleepwalking," his evidence supported only the kind of blackout that would be an affirmative defense. The court invited the defense to present additional evidence to attempt to support the type of blackout that Ireland was promoting, but the defense declined. Accordingly, the trial court altered Ireland's requested blackout instruction by adding the explanation that Ireland's blackout defense was an affirmative defense.

{¶ 60} On appeal, Ireland argued that the trial court unconstitutionally put the burden of proving unconsciousness on Ireland by describing blackout as an affirmative defense. This argument presumed that the instruction was intended to be a pure representation of the voluntary-act requirement of R.C. 2901.21(A)(1) and its negation through proving unconsciousness under R.C. 2901.21(F)(2). Given that this was not, in fact, the case at trial, Ireland's argument had a false premise and should not have been taken at face value by the court of appeals.

{¶ 61} Ireland's defense was based on his alleged altered state of consciousness due to a dissociative episode. Ireland used the defense to argue that he lacked the capacity to form the mens rea of the offense with which he was charged. Outside the context of an insanity defense, an attempt to refute the mens rea of an offense through expert psychiatric testimony constitutes a diminished-capacity defense, which is not recognized in Ohio. *State v. Wilcox*, 70 Ohio St.2d 182, 436 N.E.2d 523 (1982), paragraphs one and two of the syllabus. If an NGRI plea is not involved, "[p]roof that a person's reason, at the time of the commission of an offense, was so impaired that the person did not have the ability to refrain from doing the person's act or acts, does not constitute a defense." R.C. 2945.391.

{¶ 62} Ireland's claim of being in a temporarily altered state of consciousness is a typical diminished-capacity defense. *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 67-70 (a claim of temporary

derangement was the functional equivalent of an impermissible diminished-capacity defense); *State v. Pennington*, 4th Dist. Pickaway No. 99 CA 26, 2000 WL 670306, *4 (May 16, 2000) (evidence of a dissociative episode may not be presented for purpose of negating mens rea by a defendant who is not asserting an insanity defense); *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 23-28, *appeal not accepted*, 150 Ohio St.3d 1452, 2017-Ohio-8136, 83 N.E.3d 938 (PTSD is not a stand-alone defense, and PTSD evidence may not be presented for purpose of negating mens rea by a defendant who is not asserting an insanity defense).

{¶ 63} The lead opinion declines to address the nature of Ireland's diminished-capacity defense due to the state's waiver of certain issues at trial. The state may have waived arguments that (1) Ireland should have been prohibited from raising a diminished-capacity defense and presenting expert testimony to negate the required mens rea outside of a plea of NGRI and (2) the jury should not have been instructed to consider that defense—whether labeled as "blackout" or anything else. But the state did not waive the meaning of diminished capacity or unconsciousness as a matter of law.

{¶ 64} Unconsciousness and diminished capacity are not synonymous. Diminished capacity, while not a proper insanity defense in itself, is still an insanity-related defense. *Wilcox*, 70 Ohio St.2d at 185-186, 436 N.E.2d 523 (diminished capacity is a partial-insanity defense). It is not an unconsciousness claim. *See State v. McDaniel*, 9th Dist. Summit No. 18805, 1998 WL 887184, *4-5 (Dec. 16, 1998) (defendant's allegation of a delusional episode constituted a diminished-capacity defense, not an unconsciousness or involuntary-act claim); *Pennington* at *7 (approving of the reasoning in *McDaniel* and holding that the defendant's allegation of a dissociative episode constituted a diminished-capacity defense despite his attempts to characterize the nature of the claim as

unconsciousness); *State v. Mobley*, 5th Dist. Richland No. 2010-CA-0018, 2011-Ohio-309, ¶ 45-47.

{¶ 65} Given that insanity is a statutorily recognized affirmative defense in Ohio, R.C. 2901.01(A)(14), a partial-insanity or insanity-related defense such as diminished capacity would be an affirmative defense as well. *See Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, at ¶ 71-72 (describing diminished capacity as an affirmative defense). It is for this reason that the trial court appropriately described Ireland's defense as an affirmative defense. The fact that the trial court used the concept of blackout as a placeholder for Ireland's normally impermissible affirmative defense of diminished capacity does not mean that diminished capacity constitutes unconsciousness as contemplated in R.C. 2901.21(F)(2), nor does it mean that unconsciousness is necessarily an affirmative defense. Thus, to the extent that the trial court's explanation of Ireland's burden of proving blackout might have been unfaithful to R.C. 2901.21(A)(1) and (F)(2), it could not have caused constitutional error, let alone structural error, because it *was* faithful to the actual defense Ireland presented.

{¶ 66} The reality and severity of the psychological and neurological injuries that disproportionately plague the members of our armed forces long after they return home from combat calls into question the narrowness of Ohio's insanity standard, particularly in light of the medical community's many advancements in understanding the effects of physically and psychologically traumatic events on the brain. However, we must adhere to the current statutory scheme governing insanity and mental-impairment conditions that fall short of insanity. *See* R.C. 2945.391 and 2945.40. Whether R.C. 2945.391 should no longer include states of diminished capacity—such as the psychiatric condition of dissociation—is a question for the General Assembly alone.

{¶ 67} It may or may not be true that a claim of unconsciousness constitutes an affirmative defense. But that is an issue we should wait to consider until we

have a proper unconscious, involuntary-act scenario before us. Answering the question in this case results in an advisory opinion at best, and at worst, it sows confusion regarding the legal meanings of unconsciousness, insanity, and diminished capacity.

{¶ 68} Because the trial court determined that Ireland's partial-insanity defense did not support a blackout instruction that connoted unconsciousness as contemplated in R.C. 2901.21(F)(2), the burden of proof associated with R.C. 2901.21(F)(2) was not relevant to Ireland's case irrespective of the state's preservation of arguments at trial. The Tenth District erred in considering R.C. 2901.21(F)(2) to be central to the trial court's instruction and in finding structural error as a result. Based on these separate grounds, I would reverse the judgment of the Tenth District Court of Appeals and remand the case for that court to consider the remaining assignments of error that were mooted.

FRENCH, J., concurs in the foregoing opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 69} The lead opinion wants it both ways, arguing that the state bears the burden to prove beyond a reasonable doubt that the accused committed the offense of felonious assault with a *voluntary* act while the accused bears the burden of proving by a preponderance of the evidence and as an affirmative defense that the same act was *involuntary* because the accused lacked consciousness. The proper analysis, however, begins and ends with the elements of the offense: once it is determined that voluntariness—and therefore consciousness—is an element of felonious assault, the state retains the burden of proving it beyond a reasonable doubt regardless of whether lack of consciousness is characterized—or asserted— as a "blackout" defense. Because such a defense asserts that the state has failed to prove an element of the offense, it can never be an affirmative defense.

{¶ 70} Pursuant to R.C. 2901.21(A), a conscious, voluntary act is an element of every offense in Ohio; the state bears the burden of proving that element beyond a reasonable doubt, and the burden of proof remains with the state throughout the trial. Any contrary evidence presented by the accused relating to a lack of consciousness or a blackout defense does not assert an affirmative defense on which the accused bears the burden of proof but rather is presented to persuade the jury that the state has not carried its burden of proving guilt beyond a reasonable doubt in the first place. Blackout is a failure-of-proof defense, not an affirmative defense.

{¶ 71} Because any contrary analysis runs counter to the plain language of the statute and confuses established constitutional principles, I dissent.

### R.C. 2901.21: The Voluntary-Act Element

{¶ 72} The common-law concept of crime as the "concurrence of an evil-meaning mind with an evil-doing hand * * * took deep and early root in American soil." *Morissette v. United States*, 342 U.S. 246, 251-252, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *see also United States v. Apfelbaum*, 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980) ("In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur"). Although Ohio has abolished common-law crimes, R.C. 2901.03(A), it nonetheless has codified this common-law rule that both a culpable mental state and a criminal *act* are generally required for an offense to occur, R.C. 2901.21(A).

{¶ 73} R.C. 2901.21(A) provides:

Except as provided in division (B) of this section [pertaining to strict-liability offenses, for which culpability is not required], a person is not guilty of an offense unless both of the following apply:

(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;

(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.

And R.C. 2901.21(F)(2) clarifies that "[r]eflexes, convulsions, *body movements during unconsciousness* or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts." (Emphasis added.)

{¶ 74} We have explained that "R.C. 2901.21 sets forth the basic requirements for criminal liability," so that in Ohio, "an offense [is] defined in terms of a prohibited act accompanied by a culpable mental state." *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 8. That is, "every criminal offense is made up of (1) a voluntary act or failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state." *Id.* at ¶ 16.

{¶ 75} Accordingly, in *State v. Nucklos*, we noted that "the state must prove that the accused engaged in 'a voluntary act, or an omission to perform an act or duty that the person is capable of performing,' with the 'requisite degree of culpability' for each element of the alleged offense in order to obtain a conviction." 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶ 6, quoting R.C. 2901.21(A). These " 'material elements' " of the crime must be proved beyond a reasonable doubt. *Id.*, quoting *State v. Manley*, 71 Ohio St.3d 342, 346, 643 N.E.2d 1107 (1994).

{¶ 76} Accordingly, in this case, appellant, the state of Ohio, had the burden to prove that appellee, Darin Ireland, committed felonious assault with a voluntary act. The General Assembly has expressly provided that body movements that are

26

made during unconsciousness or that are not a product of the actor's volition are not voluntary acts. R.C. 2901.21(F)(2).

{¶ 77} Here, Ireland asserted that the state could not prove the voluntary-act element, and he presented Dr. James Reardon's expert testimony that Ireland suffered from posttraumatic stress disorder resulting from his combat experience in the Persian Gulf War. Dr. Reardon testified that throughout the hostilities, Ireland witnessed the carnage of war, including "numerous helicopters crashing and burning"—and "he could have just as easily been on those helicopters." Once, Ireland's unit came under fire, and when Iraqi soldiers advanced on his position, Ireland fired a grenade launcher at them and "silenced everything." In securing his unit's position, he found numerous dead Iraqi soldiers but also discovered the bodies of two Americans who had been taken prisoner and whom he may have killed with the grenade. While checking the bodies, an Iraqi soldier suddenly "pulled a knife out and stabbed at [Ireland], nicked him in the ribs. [Ireland] pulled his bayonet out and stabbed the guy and killed him." Ireland was awarded the Bronze Star for heroism, but since then, he has suffered flashbacks, blackouts, intrusive dreams, and intense psychological distress. For example, in one episode, Ireland "thought he was in a fight, thought he was in combat, and stabbed a wall" before regaining consciousness.

{¶ 78} Dr. Reardon evaluated Ireland and diagnosed him with posttraumatic stress disorder caused by Ireland's experiences in the war. According to Dr. Reardon, when Ireland attacked the victim in this case, Ireland was experiencing a dissociative episode caused by his disorder. Dissociative phenomena, Dr. Reardon explained, range from "a full-blown flashback—feeling like they're back, if it's a veteran, in the middle of a combat situation even though they're in a traffic jam in downtown Columbus" to professional athletes who "can just blank out everything else" to a phenomenon called "highway hypnosis, where you're in the car and you're driving and you're driving, and you realize that you've gone from here to

there, but you don't remember much of anything in between." Similarly, Dr. Reardon opined that Ireland's attack on the victim was "not a volitional experience" but, rather, "almost like a knee-jerk reaction," Ireland was "acting automatically in a dissociative episode." According to Dr. Reardon, the attack was "not a manifestation of conscious thought or awareness" and Ireland could not control his behavior when experiencing a "dissociative blackout" because "it's not a product of [his] consciousness and decision making"—"[t]here's no consciousness." Rather, Ireland was reacting "in a habitually, conditioned manner."

{¶ 79} Ireland's defense therefore was that the state had not proved that he committed a conscious, voluntary act. This conclusion is not only required by the plain language of R.C. 2901.21(A), which makes a conscious, voluntary act an element of the offense, but also is consistent with the majority rule in this country that blackout or unconsciousness is a failure-of-proof defense, meaning that it asserts that the state has not proved the voluntary-act element beyond a reasonable doubt, 2 LaFave, *Substantive Criminal Law*, Section 9.1(a)(1) (3d Ed.2018); *see, e.g.*, *Palmer v. State*, 379 P.3d 981, 989 (Alaska App.2016); *Hale v. State*, 191 So.3d 719, ¶ 12 (Miss.2016); *United States v. Torres*, 74 M.J. 154, 158 (C.A.A.F.2015); *State v. Newman*, 353 Or. 632, 647, 302 P.3d 435 (2013); *Missoula v. Paffhausen*, 2012 MT 265, 367 Mont. 80, 289 P.3d 141, ¶ 37; *Smith v. State*, 284 Ga. 33, 34-35, 663 S.E.2d 155 (2008); *State v. Kupihea*, 98 Hawai'i 196, 202, 46 P.3d 498 (2002), fn. 9; *McClain v. State*, 678 N.E.2d 104, 107 (Ind.1997); *State v. Hinkle*, 200 W.Va. 280, 286, 489 S.E.2d 257 (1996); *People v. Babbitt*, 45 Cal.3d 660, 696, 248 Cal.Rptr. 69, 755 P.2d 253 (1988); *Virgin Islands v. Smith*, 278 F.2d 169, 173 (3d Cir.1960). *But see, e.g.*, *State v. Deer*, 175 Wash.2d 725, 287 P.3d 539, ¶ 10-12, 21 (2012) (holding that consciousness is not an element of the strict-liability offense of rape of a child and that lack of consciousness is an affirmative defense).

{¶ 80} R.C. 2901.21(A), our caselaw, and the weight of authority show that a conscious, voluntary act is an element of the felonious-assault offense charged in this case. The lead opinion itself admits that "the state is required to present evidence that the defendant committed the criminal act voluntarily," yet it claims that a voluntary act is not an "essential element" of the offense. Lead opinion at ¶ 33. However, it fails to explain why labeling an element "essential" means anything in these circumstances.

{¶ 81} " 'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' " *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 2243, 2248, 195 L.Ed.2d 604 (2016), quoting *Black's Law Dictionary* 634 (10th Ed.2014). Elements are "what the jury must find beyond a reasonable doubt to convict the defendant." *Id*. The lead opinion agrees (1) that the state has the burden to prove that the accused committed a voluntary act and (2) that body movements during unconsciousness are involuntary acts. It necessarily follows that a conscious, voluntary act is an element of the offense.

{¶ 82} The lead opinion, however, asserts that the General Assembly chose not to include voluntariness in R.C. 2903.11(A). Lead opinion at ¶ 39. But it did not include any specific actus reus in that statute either, and it did not have to, because pursuant to R.C. 2901.21(A)(1), "every criminal offense is made up of * * * a voluntary act or failure to act when there is a duty," *Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, at ¶ 8. And although R.C. 2901.21(A)(2) contemplates that there are strict-liability crimes, so that criminal liability depends on the accused's having "the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense," the plain language of R.C. 2901.21(A)(1) recognizes that Ohio law does not impose strict liability for involuntary acts. Rather, criminal liability requires "conduct that includes either a voluntary act, or an omission to perform an act or duty that the

person is capable of performing." R.C. 2901.21(A)(1). The lead opinion therefore disregards the plain language of the statute when it countenances strict liability for a felonious assault committed by an unconscious, involuntary body movement.

{¶ 83} The lead opinion states that "a challenge to voluntariness is a defense." Lead opinion at ¶ 33. But that is a distinction without a difference, because challenging the sufficiency of the evidence presented at trial is always a defense. Presenting an alibi, attacking an eyewitness identification, and disputing the existence of the applicable mens rea are all defenses, yet the identity of the accused or the existence of the requisite degree of culpability are nevertheless elements. The same is true when the accused asserts that the state cannot prove beyond a reasonable doubt that criminal liability is based on a conscious, voluntary act.

### R.C. 2901.05(D)(1): Affirmative Defenses

{¶ 84} "Affirmative defense" is defined by statute as either a "defense expressly designated as affirmative," R.C. 2901.05(D)(1)(a), or a "defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," R.C. 2901.05(D)(1)(b). The accused has the burden of presenting evidence of an affirmative defense as well as the burden of proving it by a preponderance of the evidence. *Nucklos*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, at ¶ 7, citing R.C. 2901.05(A).

{¶ 85} Contrary to the lead opinion's claim, a blackout defense does not assert an excuse or justification. The definition of "excuse" relevant to criminal law is a "defense that arises because the defendant is not blameworthy for having acted in a way that *would otherwise be criminal*." (Emphasis added.) *Black's Law Dictionary* 688 (10th Ed.2014). And the relevant definition of "justification" is a "showing, in court, of a sufficient reason why a defendant acted in a way that, *in the absence of the reason, would constitute the offense* with which the defendant is

30

charged." (Emphasis added.) *Id.* at 997. As both of these definitions indicate, excuse and justification defenses "apply in the case of a particular offense even though all of the elements of that offense are fully established." 2 LaFave, *Substantive Criminal Law*, Section 9.1(a)(4), at 7. Neither type of defense seeks to negate an element of the crime; rather, both assert that although the state can prove each element of the offense, criminal liability should not attach because the accused is not blameworthy. We have therefore recognized that affirmative defenses

> "represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather * * * represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true.' "

(Ellipsis sic.) *State v. Humphries*, 51 Ohio St.2d 95, 99, 364 N.E.2d 1354 (1977), quoting *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973), quoting Anderson, 1 *Wharton's Criminal Evidence*, Section 19, at 54 and 55 (12th Ed.1955).

{¶ 86} In contrast, a blackout defense attempts to negate the conscious, voluntary-act element of the offense, and the issue at trial in this case was whether the state proved that Ireland *consciously and voluntarily* caused that harm—an element that Ireland did not concede by asserting his defense.

{¶ 87} Further, the fact that whether the accused suffered a blackout is peculiarly within the accused's knowledge does not, by itself, make blackout an affirmative defense. Other matters are peculiarly within the knowledge of the accused—such as the accused's mental state—but are not affirmative defenses. *See, e.g.*, *Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S.Ct. 1881, 44 L.Ed.2d 508

(1975) ("And although intent is typically considered a fact peculiarly within the knowledge of the defendant, this does not, as the Court has long recognized, justify shifting the burden to him").  This is true even though the accused bears the burden of going forward with evidence raising an issue that the act was not voluntary.  *See Davis v. United States*, 160 U.S. 469, 486, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

{¶ 88} Lastly, even if the blackout defense did fit R.C. 2901.05(D)(1)(b)'s definition of an affirmative defense, the Due Process Clause of the United States Constitution nonetheless prohibits the state from shifting the burden of proof to the accused when an affirmative defense negates an element of the crime.  *Smith v. United States*, 568 U.S. 106, 110, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013); *see generally* 1 LaFave, *Substantive Criminal Law*, Section 1.8(c).  As Justice Scalia explained in *Smith*,

> The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." *Martin v. Ohio*, 480 U.S. 228, 237, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (Powell, J., dissenting).  Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.  *Dixon v. United States,* 548 U.S. 1, 6, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006).

(Emphasis sic.)  *Smith* at 110.

{¶ 89} The lead opinion, however, asserts that "a state does not violate the Due Process Clause by requiring the defendant to prove an affirmative defense by a preponderance of the evidence, even when the evidence used to prove the affirmative defense might also negate an element of the offense at issue."  Lead

opinion at ¶ 40.  But the decisions cited in support of this proposition are taken out of context.

{¶ 90} In *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the accused had argued that requiring him to establish an insanity defense beyond a reasonable doubt violated his right to due process.  But importantly, "Oregon required the prosecutor to prove beyond a reasonable doubt every element of the offense charged." *Id*. at 799.  The accused's sanity was not an element of the offense, and the state had not required the accused to negate it.  (Similarly, Ohio law provides that sanity is not an element of an offense, which is why insanity is an affirmative defense. *See State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35.)

{¶ 91} When the United States Supreme Court in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), held that New York had not violated the federal Due Process Clause by requiring the accused to prove the affirmative defense of extreme emotional disturbance to reduce second-degree murder to manslaughter, the court expressly stated that placing that burden on the accused "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder," *id*. at 207.

{¶ 92} And in *Martin*, 480 U.S. at 233, 107 S.Ct. 1098, 94 L.Ed.2d 267, the Supreme Court held that the state of Ohio had not shifted the burden of proving the elements of aggravated murder when it required the accused to prove that she had acted in self-defense.  Again, the state had not defined the crime as a killing without justification, and the absence of self-defense was not an element of the offense that the state was required to prove.

{¶ 93} Here, in contrast to these cases, the General Assembly has decided that the state bears the burden to prove that the accused committed the offense with a conscious, voluntary act.  Therefore, the lead opinion's recognition that the state must prove a voluntary act should end the analysis, and its analysis shifting the

burden to the accused to prove lack of consciousness as a purported affirmative defense when the evidence used to prove it "might also negate an element of the offense at issue," lead opinion at ¶ 40, shows that the lead opinion confuses the blackout defense—which *does* negate the voluntary-act element—with the persuasiveness of the evidence presented to prove it.

{¶ 94} Ireland's blackout defense sought to negate the voluntary-act element of felonious assault, and if the jury had found that he acted while unconscious, it would have had to acquit him and he would not have needed to prove an additional excuse or justification to avoid criminal liability.

{¶ 95} "Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights," *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97, citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and subvert the presumption of innocence and the right to have a jury determine the facts of a case, *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).

{¶ 96} But here, the jury instructions placed the burden of proving the same fact—consciousness—on both the state and the accused. Over Ireland's objection, the trial court gave the following instructions:

> The burden of going forward with the evidence of blackout and the burden of proving an affirmative defense is upon the defendant. He must establish such a defense by a preponderance of the evidence.
>
> * * *
>
> If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged.

> Where a person commits an act while [unconscious], as in a coma, blackout, or convulsion due to heart failure, disease, sleep, or injury, such an act is not a criminal offense even though it would be a crime if such act were the product of a person's will or volition.
>
> If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the State of its burden of establishing by the required weight of the testimony that the act was knowingly committed.
>
> * * *
>
> Reflexes, convulsions, body movements during unconsciousness or sleep and body movements that are not otherwise a product of the act's [sic, actor's] will or volition are involuntary acts.

{¶ 97} These instructions told the jury that "blackout"—i.e., a lack of consciousness—is an affirmative defense that must be proved by the accused and that consciousness is an element of the offense that the state has the burden to establish by proof beyond a reasonable doubt. The instructions not only confused the jury but also shifted the burden to Ireland to disprove that he acted voluntarily—in violation of his right to due process. Contrary to the lead opinion's analysis, the presumption that jurors follow instructions cannot be applied when the jurors receive such countervailing, confusing, and internally inconsistent instructions, and it is telling that the state has not attempted to show that the instructions amount only to harmless error.

### Conclusion

{¶ 98} The state has authority to regulate procedures in criminal cases, including the allocation of the burden of producing evidence and the burden of

persuasion, *Medina v. California*, 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), and "a state rule of criminal procedure not governed by a specific rule set out in the Bill of Rights violates the Due Process Clause of the Fourteenth Amendment only if it offends a fundamental and deeply rooted principle of justice," *Nelson v. Colorado*, ___ U.S. ___, 137 S.Ct. 1249, 1258, 197 L.Ed.2d 611 (2017) (Alito, J., concurring in the judgment).

**{¶ 99}** But once the General Assembly has provided that a conscious, voluntary act is an element of every crime, the prosecution has the burden of proving it beyond a reasonable doubt. Due process forecloses the state from shifting the burden to the accused to disprove that he or she committed the offense consciously and voluntarily. The lead opinion's determination today that Ireland bore the burden of persuading the jury that he committed felonious assault while unconscious and in a state of blackout therefore contravenes due process and the deeply rooted principle of justice that the accused retains the presumption of innocence unless and until the state satisfies its burden of proof on all elements of the charged offense.

**{¶ 100}** Accordingly, I would affirm the judgment of the Tenth District Court of Appeals, hold that a blackout defense is not an affirmative defense but rather serves to negate the voluntary-act element of an offense pursuant to R.C. 2901.21(A)(1), and remand the matter to the trial court for a new trial.

DEWINE, J., concurs in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Michael P. Walton, Assistant Prosecuting Attorney, for appellant.

Paul Giorgianni, Giorgianni Law, L.L.C., and Shawn Dominy, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General Michael DeWine.

Timothy Young, Ohio Public Defender, and Patrick T. Clark, Assistant Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.

_____